

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2008

# Skrutski v. Marut

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2828

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Skrutski v. Marut" (2008). *2008 Decisions.* Paper 826.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/826

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 07-2828 and 07-2848

———————

THOMAS C. SKRUTSKI

v.

CAPTAIN JOSEPH MARUT; MICHAEL L. BRICE;
REBECCA S. WARNER; WANDA GILBERT

Joseph Marut, Michael Brice,
Rebecca Warner and Wanda Gilbert,

Appellants

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-02280)
District Judge: Hon. Malcolm Muir

———————

Argued June 6, 2008

BEFORE: AMBRO, CHAGARES and COWEN, Circuit Judges

(Filed:  July 18, 2008)

John G. Knorr, III, Esq. (Argued)
Office of Attorney General of Pennsylvania
Department of Justice
Strawberry Square
Harrisburg, PA 17120

Counsel for Appellants

Donald A. Bailey, Esq.
Douglas R. Goldhaber, Esq. (Argued)
Bailey, Stretton & Ostrowski
4311 North 6th Street
Harrisburg, PA 17110

Counsel for Appellee

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

Plaintiff-Appellee Thomas Skrutski, a Corporal with the Pennsylvania State Police ("PSP"), instituted this civil rights action against four other employees of the PSP, Defendants-Appellants: Captain Joseph Marut; Lieutenant Michael Brice; Trooper Rebecca Warner; and Lieutenant Wanda Gilbert.[1] The jury found in favor of Skrutski on all of the claims[2] and awarded him compensatory and punitive damages; the District Court additionally awarded him attorney's fees and costs. Defendants now appeal from both the judgment and the fees award. Because we conclude that a number of Skrutski's claims are precluded as a matter of law, we will reverse in part, vacate in part, and remand for a new trial.[3]

---

[1] All ranks and titles are as of the time of the filing of the lawsuit in 2003.

[2] Warner and Gilbert were found not liable for some of the claims in question.

[3] Our resolution on the merits of the judgment renders it unnecessary to reach the issue of the award of attorney's fees and costs.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

The gist of Skrutski's claims is that as a result of his reports of instances of inappropriate conduct by fellow PSP officers and of his filing of this lawsuit, Defendants retaliated against him by subjecting him to a number of adverse employment actions. At all times relevant to this case, Skrutski served as a patrol corporal, a supervisory position.

On two separate occasions, Defendant Brice, who then worked at a different station, called and asked Skrutski to falsify reports for two incidents that occurred in Skrutski's jurisdiction. Both incidents involved troopers under Brice's command. In one, Trooper Holly-Storms hit a deer while operating her police vehicle, but Brice wanted Skrutski to state in the report for the accident that there were empty beer bottles found in her vehicle (which there were not) and that there was no deer hair on the hood of the car (which there was). In the other, Trooper Sanfilippo committed a crime while off-duty and then led fellow PSP officers on a high-speed car chase. There, Brice approached Skrutski, who was assigned to the investigation of this incident, and asked him to "make this whole thing go away." App. at 910. Each time, Skrutski refused to get involved, and reported the incidents to his station commander.

Another time, Skrutski was in the police station parking lot when he observed Corporal Langan holding a wrench while kneeling next to a trooper's vehicle. Later, Skrutski overheard that trooper complaining someone had loosened the lug nuts on his

_____

[4] All facts are recited in the light most favorable to Skrutski, the verdict winner.

3

car; Skrutski thus reported his observations to the station commander. Langan was Brice's good friend.

The final incidents pertained to Defendant Warner, who was romantically involved with Defendant Marut. Once, Skrutski, as the supervising officer, assigned a matter to Warner for her investigation. She was upset because she did not think the case was her responsibility and did not pursue the investigation. Skrutski reported this to Warner's direct supervisor. Warner also on occasion failed to discharge certain of her administrative record-keeping duties; Skrutski issued her written reprimands and reported her to the station commander. Warner filed a formal harassment complaint against Skrutski, which led to an internal investigation of his behavior.

As a result of these various reports, Brice (who became Skrutski's commander at one point) and Marut conspired to retaliate against Skrutski by transferring Skrutski to a different post, assigning him less desirable work shifts, giving him fewer overtime hours, and refusing to accommodate his scheduling requests. Plaintiff also claimed Warner's harassment complaint was frivolous, and that Gilbert (Marut's friend), who conducted the internal investigation against him, falsified aspects of her report in order to place Skrutski in a bad light.

Following discovery, Defendants moved for summary judgment. However, with the exception of Skrutski's access to courts claim, the District Court denied the motions, concluding that triable issues of fact precluded judgment as a matter of law. Plaintiff thus

proceeded to trial on his 42 U.S.C. § 1983 claims of First Amendment retaliation, deprivations of substantive and procedural due process, and equal protection. Skrutski prevailed after a two-week trial. Defendants then filed a post-verdict motion for Rule 50 (judgment as a matter of law) or Rule 59 (new trial) relief, which the District Court denied. The District Court thus entered judgment for Skrutski, and pursuant to 42 U.S.C. § 1988, awarded him attorney's fees and costs. Defendants timely appealed from both the final judgment and the fees award.

## II. DISCUSSION

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction over the final judgment and the order awarding attorney's fees by virtue of 28 U.S.C. § 1291. We exercise plenary review over the denial of a motion for judgment as a matter of law. Leheny v. City of Pittsburgh, 183 F.3d 220, 225 (3d Cir. 1999). Reversal is warranted "only if, viewing the evidence in the light most favorable to the nonmovant and giving [him] the advantage of every fair and reasonable inference," no jury could have found liability. Fultz v. Dunn, 165 F.3d 215, 218 (3d Cir. 1998).

### A. First Amendment Claims

Skrutski bases his First Amendment claims on four sets of speech or actions: (1) his reports of Brice's alleged attempts to falsify investigations; (2) his report of Trooper Langan's possible vandalism of another officer's vehicle; (3) his criticism and reprimand of Warner for dereliction of duty; and (4) his filing of the instant civil rights action in

5

December 2003. Defendants' sole contention on appeal is that with the exception of the filing of the lawsuit, none of the instances of speech relied upon by Skrutski constitute constitutionally protected activity because they were all made pursuant to his official duties.

A public employee makes a protected statement for purposes of a First Amendment retaliation claim "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the governmental employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement." Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (internal quotations omitted). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Whether a particular statement constitutes protected activity is a legal question. Connick v. Myers, 461 U.S. 138, 148 n.7 (1983).

Recently, we held that three Delaware State Police firearms instructors' complaints to supervisors of unsafe conditions at the firing range where they worked were made pursuant to their official duties. Foraker v. Chaffinch, 501 F.3d 231, 241-42 (3d Cir.

6

2007).[5]  Because plaintiffs regularly used and maintained the equipment at the range, thereby "put[ing] any environmental concerns there within the scope of their routine operations," their internal complaints relating to these issues thus could not form the basis of a First Amendment retaliation claim.  Id. at 241-42 ("that [plaintiff] may have exceeded the expectations of his formal job description as a firearms instructor does not mean that they were not within the scope of his duties").

In this case, there can be no serious question that Skrutski's criticism and reprimands of Warner (and his subsequent reports of Warner's alleged insubordination to his supervisor) for not fulfilling her administrative and investigative responsibilities was done as part of Skrutski's official duties as a supervisor.  Furthermore, as to his reports of Brice's requests and of the suspected vandalism, all of the underlying events occurred when Skrutski was working as a patrol supervisor, when he was "directly responsible for the actions of [the] troopers" assigned to him.  App. at 884.  Plaintiff was also involved in the investigation of the Sanfilippo incident and was responsible for preparing a written report on the matter.  App. at 908 (Skrutski: "I was instructed by my superior to conduct a fact finding mission ... I had to interview the local officers and ascertain the crime that Mr. Sanfilippo was being pursued for and whether Mr. Sanfilippo would be charged by them.").  In light of these circumstances, coupled with the undisputed fact that all of

---

[5]  We note the District Court did not have the benefit of this decision when it made its summary judgment and post-trial determinations.

Skrutski's complaints about these incidents were only made within his direct chain-of-command, <u>Foraker</u> compels our conclusion that none of these internal statements can serve as the predicate for a viable First Amendment retaliation claim. Any determination to the contrary would plainly be against the weight of legal authority. <u>See, e.g.</u>, <u>Vose v. Kliment</u>, 506 F.3d 565, 570 (7th Cir. 2007) (that narcotics unit supervisor "may have gone above and beyond his routine duties by investigating and reporting suspected misconduct in another police unit" to supervisors does not mean he spoke as a citizen); <u>Williams v. Dallas Indep. Sch. Dist.</u>, 480 F.3d 689, 694 (5th Cir. 2007) (athletic director's memo to office manager and school principal complaining of mishandling of athletic accounts was written in the course of his job); <u>Haynes v. City of Circleville</u>, 474 F.3d 357, 364 (6th Cir. 2007) (canine handler's memo to police chief criticizing proposed cutbacks in canine program was written pursuant to professional duties). Accordingly, the judgment in favor of Skrutski, insofar as it relied upon these unprotected statements and activities, must be reversed; Defendants are entitled to a judgment as a matter of law on these portions of Plaintiff's First Amendment claim.

On the other hand, there is no dispute that Plaintiff's filing of this action in December 2003 is a protected activity under the First Amendment, and is thus a valid basis upon which to premise a cognizable retaliation claim. However, because the evidence presented at trial pertained almost exclusively to Defendants' retaliatory actions predating the lawsuit, and because the jury's damages award failed to distinguish between

8

the particular bases for retaliatory liability, we must vacate both the judgment and the damages award. See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 485-87 (3d Cir. 1997) (reaching same conclusion where evidence relating to time-barred discrimination claims "likely infected" liability verdict, and where it was impossible to determine what portion of the damages award was attributable to the not out-of-time claims). Under the unique circumstances of this case, we cannot be sure that the heavy weight of the pre-December 2003 evidence on the legally insufficient retaliation claims did not color the jury's resolution of the post-December 2003 claim;[6] Defendants Marut and Brice are thus entitled to a new trial, limited to the allegation that they impermissibly retaliated against Plaintiff for filing this lawsuit. See id. at 485 (remanding for new trial where evidence on legally valid and invalid claims of discrimination were "presented in tandem"); see also, e.g., Thomas v. E.J. Korvette, Inc., 476 F.2d 471, 476 (3d Cir. 1973) ("[a]n improper submission of a material issue to the jury is [a] ground for a new trial") (quoting 6A Moore's Federal Practice § 59.08[2]); Libbey-Owens-Ford Co. v. Ins. Co. of N. Am., 9 F.3d 422, 427 (6th Cir. 1993) (same).

B.      Substantive Due Process

Defendants are also entitled to prevail on Skrutski's substantive due process claim.

---

[6] In reaching this conclusion, we emphasize that we have no occasion to pass upon, and thus express no opinion as to whether the evidence directly relating to the retaliation occurring prior to December 2003 would be admissible in a trial pertaining solely to the filing of the lawsuit.

The Due Process Clause contains both procedural and substantive components; when a substantive due process claim is premised upon a non-legislative state action, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Nicholas v. Pa. State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000)). Only property interests that are fundamental under the federal Constitution are sufficient for purposes of substantive due process. Nicholas, 227 F.3d at 140 (collecting cases); see also Reich v. Beharry, 883 F.2d 239, 243 (3d Cir. 1989) (whereas certain state law property interests may give rise to procedural due process claims, "not all property interests worthy of procedural due process protections are protected by the concept of substantive due process").

Skrutski's substantive due process claim is premised solely on "monies he lost as a result of the denial of overtime by the defendants." Appellee's Brief at 42. However, Skrutski did not present any evidence at trial that he was legally entitled to any overtime assignments; on the contrary, he expressly testified that no such entitlement existed. App. at 1134 ("[Defense counsel]: Is there any entitlement to overtime in the State Police? [Skrutski]: No."). His substantive due process claim must fail as a result. See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of

10

entitlement to it."); see also, e.g., Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008) (loss of overtime does not constitute protected property interest even in *procedural* due process context); Brown v. Brienen, 722 F.2d 360, 365 (7th Cir. 1983) ("Disputes over overtime ... do not implicate the great objects of the Fourteenth Amendment.").

C.      Procedural Due Process

Plaintiff's procedural due process claim – based on Defendants' actions resulting in his being suspended without pay – is likewise foreclosed as a matter of law. Here, there is no question Skrutski has established a requisite deprivation of property. However, no due process violation occurs as a result of an adverse employment action as long as the government provides the employee with notice and an adequate opportunity to be heard after the fact. McDaniels v. Flick, 59 F.3d 446, 459-60 (3d Cir. 1995) (citing Parratt v. Taylor, 451 U.S. 527, 543 (1981)). A public employer may discharge its due process obligations by providing for facially adequate post-deprivation grievance procedures, even if the initial determination resulting in the deprivation was biased. Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995); Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983). Grievance procedures provided in collective bargaining agreements may satisfy due process. Dykes, 68 F.3d at 1572 n.6; Armstrong v. Meyers, 964 F.2d 948, 951 (9th Cir. 1992) (quoted with approval in Dykes, 68 F.3d at 1571).

Here, Skrutski is a member of the Pennsylvania State Police Association union,

11

was notified of the internal investigation, the charges lodged against him, and the proposed discipline, and was given the opportunity to respond. App. at 1132-33; 1061-65. After being so notified, Skrutski initiated grievance procedures (through the independent grievance committee) against the disciplinary actions imposed, but his union representative ultimately settled the dispute without his consent. App. at 1061-65, 1070-74; 1081-89. These undisputed facts fatally undermine Skrutski's due process claim.

Absent an allegation that the post-discipline grievance procedures at issue were *per se* inadequate (or not followed or otherwise completely unavailable), our decision in Dykes makes clear that there can be no departmental violation of due process under the circumstances. That Gilbert and Marut colluded to impose sham disciplinary charges on Plaintiff simply has no legal relevance on the due process question before us because Skrutski presented no evidence that Defendants were involved in the *subsequent*, *post-deprivation* grievance proceedings conducted by the union.[7] To the extent Skrutski objects that the union settled the grievance without his consent, that is a claim more appropriately addressed through an action against the union itself. See Martino v. Transp. Workers Union of Phila., 480 A.2d 242, 243 (Pa. 1984) (plaintiff claimed union "violated its duty of fair representation by failing in bad faith to pursue his grievance to impartial

---

[7] Defendant Marut made the initial departmental decision to impose disciplinary charges against Skrutski. However, he was not a member of the grievance committee nor otherwise involved in the subsequent independent grievance procedures through the union, other than in the capacity as a witness.

arbitration"); <u>Jackson</u>, 721 F.2d at 933 (action against both union and employer based on allegations that union did not adjudicate plaintiff's grievance fairly). In sum, Defendants are entitled to a judgment in their favor on Skrutski's procedural due process claim.

D.       Equal Protection Claim

Finally, Skrutski proceeded on his equal protection claim below based on the "class of one" theory articulated in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000) (per curiam). This legal avenue is now clearly foreclosed by the Supreme Court's recent decision that such claims are not cognizable in the public employment context. <u>Engquist v. Oregon Dep't of Agric.</u>, __ S. Ct. __, 2008 WL 2329768, *2 (June 9, 2008).

III.     CONCLUSION

For the reasons set forth above, we will reverse the judgment entered in Skrutski's favor on the portions of his First Amendment retaliation claim premised on his internal complaints, and on the due process and equal protection claims; the District Court shall accordingly enter judgment for Defendants on these counts. We will also vacate the damages award and the judgment for Skrutski on his retaliation claim based on the filing of this lawsuit, and remand the matter for a new trial limited to this issue. The award of attorney's fees and costs will likewise be vacated.